# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on January 10, 2014

## STANLEY DON RUNYON v. MELANIE FORTNER RUNYON

**An Accelerated Interlocutory Appeal from the Circuit Court for Shelby County**
**No. CT-001847-11      Donna M. Fields, Judge**

---

**No. W2013-02651-COA-T10B-CV - Filed March 31, 2014**

---

This is a Rule 10B appeal of the denial of a petition for recusal. In this divorce case, the trial court bifurcated the issues and conducted a 15-day evidentiary hearing solely on the parties' parenting arrangement. Months later, the trial court entered an order designating the father as the primary residential parent and giving the mother supervised parenting time. The mother was denied permission for an interlocutory appeal from the parenting order. Several months after that, the mother discovered that, in the course of drafting the parenting order, the trial judge's office had an *ex parte* exchange with the guardian ad litem to confirm a minor factual matter. The mother alleged that the trial judge had violated ethical rules against such *ex parte* communications and filed a motion asking the trial judge to recuse herself. The trial court denied the motion to recuse. The mother filed this accelerated interlocutory appeal of the denial of her recusal motion pursuant to Rule 10B of the Tennessee Supreme Court Rules. We decline to adjudicate whether there was a breach of any ethical rules. As to the trial judge's denial of the motion for recusal, we affirm.

### Tenn. Sup. Ct. R. 10B Accelerated Interlocutory Appeal; Judgment of the Circuit Court is Affirmed

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and ROGER A. PAGE, J., joined.

Larry Rice and Mary L. Wagner, Memphis, Tennessee, for the Defendant/Appellant, Melanie Fortner Runyon

Kimbrough B. Mullins and Charles M. McGhee, Memphis, Tennessee, for the Plaintiff/Appellee, Stanley Don Runyon

Daniel Loyd Taylor, Memphis, Tennessee, for the Guardian ad Litem, Lisa Zacharias

## OPINION

### Background

On April 18, 2011, Plaintiff/Appellee Stanley Don Runyon ("Father") filed a petition for divorce against Defendant/Appellant Melanie Fortner Runyon ("Mother") in the Circuit Court for Shelby County, Tennessee. Three children were born of their marriage, two sons and a daughter ("Daughter"). Only Daughter, born in July 2003, was still a minor at the time of the proceedings that led to this appeal.[1] The divorce case was assigned to Judge Donna Fields.

On January 6, 2012, the trial court appointed attorney Lisa Zacharias as the guardian ad litem ("GAL") for Daughter. Pending the divorce trial, largely by agreement of the parties, Daughter had roughly equal parenting time with both parents on a week-on/week-off schedule.[2] In May 2012, the trial court entered a consent order in which the parties agreed to the trial court's appointment of Fred A. Steinberg, Ph.D., to perform a forensic psychological custody evaluation and assessment as to all parenting issues. The trial court bifurcated the parenting issues and the property issues for trial.

The first phase was the trial of the parenting issues, held over a period of 15 nonconsecutive days between November 16, 2012, and January 17, 2013. The transcript of this hearing is over 4,000 pages long with 157 exhibits, and the docket sheet for this phase alone is 48 pages.[3] At the conclusion of this hearing, the trial court gave the parties one week to file motions and submit proposed orders.[4] Despite the trial court's directive, the parties debated the proposed findings of fact and conclusions of law on the parenting issues until after March 1, 2013.

In March 2013, in the absence of a final order on the parenting issues, the parties sought guidance from the trial court on the allocation of parenting time for Daughter's upcoming

---

[1]At the time of the parenting hearing below, one of the parties' sons lived with Father and the other lived with Mother.

[2]According to Mother, prior to Summer 2012, she was the primary caregiver for Daughter.

[3]Only selected portions of the trial transcript were submitted by the parties in this appeal.

[4]The trial court cautioned counsel that the trial judge had a three-week medical malpractice trial and then a scheduled absence of several weeks for surgery.

spring break from school.[5]  In a hearing held on March 6, 2012, the trial court determined that Daughter would spend her 2013 spring break with Father, and thereafter Daughter would alternate her spring break with the parties each year.  On April 3, 2013, the trial court entered a written order consistent with its oral ruling.  The order specified that, after Daughter's 2013 spring break, the parties would resume the "week on, week off parenting time" arrangement.  The trial court commented at that time, "It is the intent of the Court that neither party have three consecutive weeks of parenting time" with Daughter.

On approximately April 5, 2013, before the trial court entered its written order on parenting time, Father filed a motion asking the trial court to require Mother to take Daughter to see a particular tutor.  On April 10, 2013, before Mother filed her response to Father's motion on tutoring, the trial court had a telephonic hearing on the motion with counsel for the parties and the GAL; the parents were not given advance notice of the telephone hearing.  Counsel for Mother had two employees take notes on what transpired in the April 10, 2013 teleconference call; those employees later executed affidavits based on their notes of the hearing.  At the hearing, it appears that Mother would not agree to the tutoring but was willing to accede if Daughter's physicians said that it would do the child no harm.  Two weeks later, on April 24, 2013, the trial court entered a written order granting Father's motion and directing the continuation of Daughter's tutoring with the specified tutor during the child's summer break.  The order stated that the holding was based on the argument of counsel and emails on the opinions of Daughter's treating medical professionals regarding the tutoring.

Less than a month later, on May 17, 2013, the trial court issued a 30-page order adjudicating the parties' parenting issues.  In the order, the trial court credited the testimony of both Father and Dr. Steinberg, the court-appointed psychologist.  In his evaluation submitted to the trial court, Dr. Steinberg diagnosed Mother with "Narcissistic Personality Disorder with Borderline Personality Disorder Features" and determined that Mother's psychological problems had negatively affected the parties' children.[6]  The parenting order recited the trial court's concern that, if Daughter were permitted to reside primarily with Mother, Mother's influence would eventually cause Daughter to become alienated from Father. Consequently, the trial court designated Father as Daughter's primary residential parent and granted Mother only two hours per week of supervised parenting time at the Exchange Club. The trial court ordered the restrictions on Mother's parenting time to continue until Mother produced

_____

[5]It appears that  no formal written motion was filed regarding spring break; instead, the issue was raised to the trial court in a conference call in which all necessary parties participated.

[6]Dr. Steinberg reportedly found Mother to be "a manipulative person who uses anger, threats and bullying to control whatever situation she is in, or whomever she is attempting to manipulate."

evidence that she "has corrected her destructive behavior and inability to put the children before her disdain for her Husband," and also "[u]ntil the Court sees evidence from psychologists that [Daughter] will be positively parented."[7] The order indicated that the trial court intended to review the parenting arrangement every six months.

Mother filed a timely motion for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. After a hearing, on May 31, 2013, the trial court entered an order denying Mother's motion.

On June 10, 2013, the trial court issued a brief oral addendum to its May 31, 2013 ruling. The addendum was apparently in response to Mother's contention that the trial court's finding that Mother's influence was harmful to Daughter was inconsistent with the trial court's failure to remove the child from Mother's care until several months after the hearing. In its addendum, the trial court explained it did not immediately remove Daughter because the danger to the child was not immediate or imminent; rather, Mother's "destructive influence and emotional abuse was of long-standing etiology and insidious in nature." The trial judge stated affirmatively that she "has no bias, no sympathies in this Court's decision and I am constrained by the law and I follow the law."

Dissatisfied with the parenting order, Mother filed an application with this Court for permission for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. On September 6, 2013, this Court entered an order denying Mother's application for extraordinary appeal.

Meanwhile, on or about August 21, 2013, the GAL sent an invoice for her fees to Mother.[8] The invoice included entries indicating that, on April 16, 2013, a staff member from Judge Fields' office contacted the GAL to request information about Mother's residence, referred to as the "Three Doves property." The relevant entries read:

> 4/16/13        Telephone call from Judge Fields' office requesting information regarding Three Doves property;
>
> 4/16/13        Receipt of message from Judge Fields' office; telephone conference with Runyon re: Three Doves property;

---

[7]The trial court found that Mother's "behavior in front of others, particularly people known to the couple, and in front of their children, is both bizarre and unacceptable behavior in civilized society."

[8]The GAL fees were to be divided equally between the parties, but the submissions to this Court do not indicate whether the GAL's invoice was also sent to Father.

4/16/13        Telephone conference with Judge Fields' office with response regarding Three Doves property – no pool, but has 2 acre pond.

Thus, the invoice entries indicated possible *ex parte* contact between the GAL and the trial judge's office, and possible *ex parte* contact between the GAL and Father as well. Each entry was billed for .05 hours, for a total of nine minutes billable time for all three entries.

On August 26, 2013, counsel for Mother called the GAL to inquire about the invoice entries.[9] According to affidavits signed by witnesses to the conversation, the GAL told counsel for Mother that Judge Fields asked the GAL whether there was a pool on the Three Doves property and the GAL's response was, "No, but there is a pond."  The GAL allegedly told Mother's counsel that she probably called Father for the answer to the trial court's question, adding that, if this were so, she did not know why she called Father instead of Mother.  The GAL also indicated that the first two of the three entries in question may have been duplicates.  The GAL insisted that the existence of a pool on the property was all that the GAL discussed, and she maintained that it was not inappropriate for her to respond to Judge Fields' question.

The next day, the GAL sent an email to counsel for Mother. The email said that the GAL "felt ambushed" by the phone call from Mother's attorney and was "not thinking clearly and was trying to answer you despite not being able to recall the day in question."  Upon further reflection and discussions with her secretary, the GAL said, she realized that she had been unable to clearly recall the events because she "did NOT talk to anyone in the Judges [sic] office," her secretary did.  The GAL explained in her email that her secretary left her a note with the trial court's question, the GAL obtained the answer, and then the GAL's secretary called Judge Fields' office with the answer.  The GAL's email stated, "I had no contact with the Judge."

On August 29, 2013, based on this information, Mother filed a motion asking Judge Fields to recuse herself from the case.  Mother also filed a separate motion to excuse the GAL and a motion to set aside the judgment in the May 17, 2013 parenting order.

In the motion to recuse, Mother argued that Judge Fields was disqualified from presiding over the matter for violation of several provisions of Rule 10 of the Tennessee Supreme

---

[9]The submissions to this Court do not reveal whether counsel for Father was notified of this phone call or invited to participate in the conversation with the GAL.

Court Rules, Rules of Judicial Conduct ("RJC"), specifically Sections 2.09 and 2.11.[10]  She argued that, by engaging in *ex parte* communications with the GAL and making independent inquiries into Mother's property situation, Judge Fields created "a convincing appearance of impropriety."  Mother pointed to the fact that, early in the parenting hearing, Judge Fields commented that it was not her "intent for the parties to have supervised visitation unless there is some major concern that I can be convinced of.  These children need their parents.  They need both their parents."  In the same way, Mother claimed, the trial court's March 2013 ruling on spring break indicated the trial court's intent at that time to maintain the week-on/week-off visitation, and also that neither party have three consecutive weeks of parenting time.  Mother's parenting time with Daughter had no significant restrictions, Mother pointed out, until after the April 16 *ex parte* communication between the trial court and the GAL. To bolster her argument, Mother cited other actions by Judge Fields that allegedly indicated lack of impartiality. Mother pointed to the impromptu April 10, 2013 telephonic hearing on Father's motion for tutoring, in which the trial court denied Mother an opportunity to respond to Father's motion, Mother's request to have a court reporter present, and Mother's request for an evidentiary hearing; the trial court then granted Father's motion.  Mother also noted that, at the parenting hearing, Judge Fields reviewed certain psychological records of the parties' son *in camera* and may have relied on those documents in making her ruling, but nevertheless denied Mother's request to examine the same records.

The motion to recuse was set for hearing on September 6, 2013.  Father filed a motion for a continuance, which was heard on September 4, 2013.   The trial court granted the continuance but did not set a new hearing date at that time.[11]

On October 11, 2013, Mother filed an amended motion to recuse.  The amended motion included the same arguments as the original motion.  Mother submitted 22 exhibits and unpublished authorities in support of the motion.

The amended motion to recuse also included the results of an anonymous survey commissioned by Mother for purposes of her motion to recuse, supposedly showing that the sampling of the general public in the survey perceived the trial court's actions as inappropriate.[12]

---

[10]The original motion to recuse was not submitted with Mother's petition for appeal, but Mother indicates that the amended petition includes the same arguments as in the original petition, with a few additions.

[11]Not long after that, Judge Fields was absent for several weeks on medical leave.

[12]The survey posed a hypothetical scenario purporting to be the facts in this case, and asked the survey participants whether the judge's actions were appropriate and whether the judge should continue to preside

(continued...)

Father filed a response to the Mother's amended motion to recuse, and the GAL filed a response to Mother's motion to excuse the GAL from the case. Mother filed a reply and an amended reply to the responses.

On November 12, 2013, the GAL filed documents in support of her response to Mother's motion to excuse the GAL from the case. The GAL filed her own affidavit averring that the April 16, 2013 communications between her office and Judge Fields' office were "administrative in nature" and that "the topic had been presented to the Court in testimony of the parties." The GAL said that she had "not witnessed anything that would make me question Judge Fields' impartiality," and that granting the motion to recuse would cause further undue delay in resolution of the case. Attached to the GAL's affidavit were (1) an affidavit of the GAL's secretary, Theresa Lamb; (2) pre-bills indicating Ms. Lamb's entry for time spent addressing the court's question; (3) a handwritten note from Ms. Lamb to the GAL; and (4) a copy of a text message between the GAL and Ms. Lamb. The attachments were submitted to support the GAL's assertion that the communications between Judge Fields' office and Ms. Lamb were only about the existence of a pool at the Three Doves property, and that the communications were merely administrative because the parties had testified to the relevant facts at the hearing.

Also on November 12, 2013, the parties appeared for a hearing on Mother's Amended Motion to Recuse. Judge Fields declined to hear oral argument and told the parties that she intended to promptly issue a written ruling.

On November 19, 2013, Judge Fields entered a written order denying Mother's motion to recuse. In the order, Judge Fields first noted that the subject of whether there was a pool at either of the parties' homes was explored in the testimony presented at the parenting hearing. Judge Fields then explained that she could not locate notations on the testimony about that issue in her notes on the evidence presented at the hearing:

> Included in the proof at trial was the fact that Mother disapproved of Father's purchase of a houseboat. Her reason was that two of their children could not swim. Mother's anger at Father's purchase of a boat because it endangered the children raised in the Court's mind the question of whether either parent's home had a pool as the Court recalled some testimony about a pool but could not find a reference in her notes. As previously stated, the

[12](...continued)
over the case in question. According to the survey, 89.3% of those surveyed concluded that the trial judge "made improper communications," and that "another judge should hear the rest of the case."

testimony in this case required fifteen days of trial and eventually generated a 4,000 page transcript.

> The question of a pool at the parents' homes had been addressed at least once in the proof at trial. (Transcript p. 2261, 1. 4, hearing on January 9, 2013), but the Court could not find a reference in her trial notes to the testimony concerning whether either parent's home had a pool. The Court had her courtroom clerk call the Guardian ad Litem's office solely concerning whether there was a pool at the Mother's home, and then a call to see if there was a pool at the Father's home. The answer came back that neither home had a pool, but there was a pond at the Mother's home.

Thus, Judge Fields acknowledged telephone calls between her staff and the GAL, but said that they were simply to "double check" Judge Fields' recollection of the testimony on the existence of a pool.

In the order denying Mother's motion to recuse, Judge Fields also observed, "Regardless of which counsel the Court had contacted, the answer would have been exactly the same — that there was no pool at Mother's house (but there is a pond), and that there is no pool at Father's house." She indicated that the GAL's response to her questions merely confirmed Judge Fields' recollection of the testimony on the existence of a pool and "added no new fact to this matter." Judge Fields asserted that the telephone calls "did not concern anything that had any substantive bearing on the custody ruling" and "gave no party any advantage."

Judge Fields' order concluded that the facts did not impugn her impartiality and did not require recusal. To require recusal, Judge Fields reasoned, "[t]he alleged bias or prejudice must come from something other than the facts the judge has learned during the case under consideration," and the judge's conduct must demonstrate bias or prejudice when viewed under an objective standard. Judge Fields explained:

> The Court's clerk made phone calls to the Guardian ad Litem to help the Court administratively marshal the Court's notes while working on a ruling. Tennessee Supreme Court Rule 10, Rule 2.9, recognizes that ex parte contact is permitted for such administrative matters, when the judge reasonably believes that no party will gain procedural, substantive, or tactical advantage as a result of the ex parte communication. That is the case here. Rule 2.9 further requires that the judge promptly notify all other parties of the substance of the ex parte communication and give the parties the opportunity to respond. No substance was discussed. Since the topic was irrelevant to the Court's ruling, there was nothing for any party to respond to, nor would any response be any different at all on the fact reported by the Guardian ad Litem. The

-8-

phone calls did not touch on the merits of the case. The phone calls are no evidence of any bias or pre-judging of the case.

Judge Fields commented that Mother's motion for recusal could be read to insinuate that Judge Fields may have elicited a bribe during the *ex parte* phone calls, and she pointed out that Mother offered no evidence to support this insinuation. Judge Fields held that Mother's due process rights were not violated, and she rejected Mother's other arguments in support of her claims of bias. Judge Fields commented: "Adverse rulings . . . are not usually sufficient grounds for recusal."

Mother filed this interlocutory appeal as of right from the trial court's order denying the motion to recuse pursuant to Rule 10B of the Tennessee Supreme Court Rules. Tenn. S. Ct. R. 10B ("Rule 10B"), § 2.01. On December 16, 2013, Judge Fields entered an order *sua sponte* to stay the trial court proceedings pending the outcome of this appeal. *See id.* § 2.04.

## APPEALS UNDER RULE 10B

Rule 10B authorizes an aggrieved party to file "an accelerated interlocutory appeal as of right" from an order denying a motion to recuse or to disqualify the trial court judge.[13] *Id.* § 2.01. Under Rule 10B, the appellant must file, along with the petition, "copies of any order or opinion and any other parts of the record necessary for determination of the appeal." *Id.* § 2.03. The appellate court may order the other parties to answer the appellant's petition and file any necessary documents, but it is also authorized to adjudicate the appeal summarily, without an answer from other parties. *Id.* § 2.05. In this case, Father responded to Mother's appeal and filed copies of additional documents from the trial court proceedings in support of his position that the trial court correctly denied the motion to recuse.

---

[13]Section 2.01 provides:

> If the trial court judge enters an order denying a motion for the judge's disqualification or recusal, or for determination of constitutional or statutory incompetence, an accelerated interlocutory appeal as of right lies from the order. The failure to pursue an accelerated interlocutory appeal, however, does not constitute a waiver of the right to raise any issue concerning the trial court's ruling on the motion in an appeal as of right at the conclusion of the case. The accelerated interlocutory appeal or an appeal as of right at the conclusion of the case shall be the exclusive methods for seeking appellate review of any issue concerning the trial court's denial of a motion filed pursuant to this Rule.

Rule 10B, § 2.01.

We emphasize that the only issue before the Court in this appeal is whether the trial judge erred in denying Mother's motion to recuse. *See McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014); *In re Bridgestone Corp.*, No. M2013-00637-COA-10B-CV, 2013 WL 1804084, at *1 (Tenn. Ct. App. Apr. 26, 2013), *perm. app. denied* (Tenn. June 11, 2013). In accordance with Rule 10B, we review the trial court's recusal decision "upon a *de novo* standard of review."[14] Rule 10B, § 2.06. The party seeking recusal bears the burden of proof, and "any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case." *McKenzie*, 2014 WL 575908, at *3. "If the bias is alleged to stem from events occur[r]ing in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Id.*

## ANALYSIS

In general, Mother argues that Judge Fields erred in refusing to recuse herself after she initiated *ex parte* communications with the GAL to seek out prejudicial information against Mother. Mother also contends that, both before and after the *ex parte* communications, Judge Fields allegedly demonstrated "a continued display of bias and hostility toward Mother and her counsel."[15]

We briefly review the Rules of Judicial Conduct on which Mother relies. RJC 2.11 requires recusal "in any proceeding in which the judge's impartiality might reasonably be questioned," including any situation in which "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." This is consistent with the more general RJC 1.2, which directs judges to "act at all times in a manner that promotes public confidence in the independence, integrity and impartiality of the judiciary" and to "avoid impropriety and the appearance of

---

[14]Prior to the adoption of Rule 10B, which became effective July 1, 2012, our standard of review for all recusal orders was the abuse of discretion standard. *See State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995). Under Section 2.06 of Rule 10B, we apply a *de novo* standard of review in Rule 10B appeals.

[15]On January 24, 2014, Father filed a motion with this Court to strike Mother's reply brief in this appeal. He argues that a reply brief is not permitted under Rule 10B. We agree that Rule 10B does not specifically authorize the appellant in a Rule 10B to file a reply brief, so Mother should have sought leave from this Court before filing her reply brief. Nevertheless, we exercise our discretion to allow the reply brief and have considered the arguments in Mother's reply brief in this appeal. Accordingly, Father's motion to strike is hereby denied.

impropriety." RJC 2.9 governs any *ex parte* communications that may take place between a judge and the parties to the litigation or their attorneys.[16]

---

[16]The Rule provides:

(A) A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:

(1) When circumstances require it, *ex parte* communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:

(a) the judge reasonably believes that no party will gain procedural, substantive, or tactical advantage as a result of the *ex parte* communication; and

(b) the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication, and gives the parties an opportunity to respond.

(2) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties a reasonable opportunity to respond to the advice received.

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

(4) [Intentionally omitted]

(5) A judge may initiate, permit, or consider any *ex parte* communication when expressly authorized by law to do so.

(B) If a judge receives an unauthorized *ex parte* communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

(C) A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.

(D) A judge shall make reasonable efforts, including providing appropriate supervision, to
(continued...)

-11-

## *Ex Parte* Communications With the GAL

The facts surrounding Mother's claims are largely undisputed.[17]  The documents submitted by the parties on the *ex parte* communications are: (1) the April 16, 2013 entries in the GAL's fee bill; (2) the two affidavits filed by Mother describing the GAL's August 27, 2013 teleconference with counsel for Mother; (3) the GAL's email to counsel for Mother correcting her recollection of the April 16, 2013 communications; and (4) the GAL's affidavit filed on November 12, 2013, with attachments, indicating that the discussions were only on the existence of a pool at Mother's home and that this was an administrative task of confirming for Judge Fields facts already introduced into evidence at the parenting hearing. Excerpts from the transcript of the parenting hearing reveal that Judge Fields asked Mother directly at the hearing whether she had a pool, and Mother responded that she did not.

Overall, the documents submitted establish the following facts — that Judge Fields or a member of her staff called the GAL, the call was received by either the GAL or her secretary, Judge Fields or her staff member inquired about whether Mother had a pool at her residence, and the existence of a pool at Mother's residence was a fact about which Mother testified at the parenting hearing.[18]  After that, either the GAL or the GAL's secretary contacted Father, but did not contact Mother, and the GAL or her secretary reported back to Judge Fields or her staff member that Mother's residence did not have a pool, but did have a pond.

Mother argues vigorously that the trial court's *ex parte* investigation of Mother but not Father made it appear that Judge Fields was "seeking prejudicial information against Mother."  The statement by Judge Fields in her recusal order that she sought information on the existence of a pool at the homes of *both* Mother and Father was an attempt to avoid the appearance of impropriety, Mother argues, and she notes that the GAL recalled that the trial court's question was as to Mother only.  On these facts, Mother claims, Judge Fields' impartiality could reasonably be questioned, particularly given the timing of the *ex parte*

---

[16](...continued)
> ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.

RJC 2.9.

[17]Mother refers in her argument to "changing versions" of the *ex parte* communications.  While there are a few variations on the facts, the variations are *de minimus* and make little difference to the analysis.

[18]Judge Fields stated in her recusal order that she called the GAL to inquire about the pool situation at the homes of both Mother and Father.  In contrast, the documents submitted with Mother's recusal petition indicated that the GAL described the inquiry as only about the "Three Doves property," Mother's home.  We assume *arguendo* that Judge Fields' question for the GAL related to a pool only at Mother's home.

communications. Prior to the communications, Mother claims, Judge Fields was predisposed to continue the parties' unsupervised week-on/week-off parenting arrangement. After the *ex parte* communications, Judge Fields severely restricted Mother's parenting time. The timing of Judge Fields' decision, Mother argues, makes it appear as if the improper *ex parte* communications were "the basis for a radical change in the Trial Court's position, and did prejudice Mother." Petition at p. 11. Mother contends that "seeking prejudicial information against Mother, then departing from her prior parenting orders of week-to-week parenting time by placing Mother under restricted supervised visitation," created an appearance of impropriety and partiality toward Father that required the trial court to grant Mother's motion for recusal.

Mother disputes Judge Fields' characterization of the communications with the GAL as "administrative" within the meaning of RJC §2.9. But even if the communications were administrative, Mother points out, RJC § 2.9 says they are permitted only if the parties are given an opportunity to respond, which was not done in this case. Under all of these circumstances, Mother urges this Court to conclude that Judge Fields violated several Rules of Judicial Conduct, that her actions created an appearance of impropriety and partiality toward Father, and that Judge Fields erred in declining to recuse herself from this case.

In deciding whether to recuse from a matter based on partiality, the Tennessee Supreme Court has explained that a judge must apply both a subjective test and an objective test:

> Motions for recusal call into question the integrity of the judicial process and require serious and careful consideration. Persons appearing in Tennessee's courts have a fundamental right to have their cases heard and decided by fair and impartial judges. ***Bean v. Bailey***, 280 S.W.3d 798, 803 (Tenn. 2009); ***Chumbley v. People's Bank & Trust Co.***, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933). This right "guard[s] against the prejudgment of the rights of litigants and [assists in] avoid[ing] situations in which the litigants might have cause to conclude that the court . . . reached a prejudiced conclusion because of interest, partiality, or favor." ***State v. Austin***, 87 S.W.3d 447, 470 (Tenn. 2002) (appendix).
>
> To protect this right, Article VI, Section 11 of the Constitution of Tennessee states that judges should not preside over trials in which they "may be interested." Likewise, Tenn. Sup. Ct. R. 10, Canon 2(A) states that judges "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Accordingly, Tenn. Sup. Ct. R. 10, Canon 3(E)(1) admonishes that "[a] judge shall disqualify himself or herself

in a proceeding in which the judge's impartiality might reasonably be
questioned."

*In re Hooker*, 340 S.W.3d 389, 394-95 (Tenn. 2011), *quoted in Camp v. Camp*, 361 S.W.3d
539, 547 (Tenn. Ct. App. 2011). In *Bean v. Bailey*, cited in *In re Hooker*, the Court
emphasized the objective standard:

> We have held that a recusal motion should be granted when "the judge has any
> doubt as to his or her ability to preside impartially in the case" or " 'when a
> person of ordinary prudence in the judge's position, knowing all of the facts
> known to the judge, would find a reasonable basis for questioning the judge's
> impartiality.' " *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882
> S.W.2d 810, 820 (Tenn. Crim. App. 1994)). Even if a judge believes he can
> be fair and impartial, the judge should disqualify himself when " 'the judge's
> impartiality might be reasonably questioned' " because "the appearance of bias
> is as injurious to the integrity of the judicial system as actual bias." *Id.*
> (quoting Tenn. Sup. Ct. R. 10, Canon 3(E)(1)).

*Bean v. Bailey*, 280 S.W.3d 798, 805 (Tenn. 2009). Thus, to preserve the integrity of the
judicial system, if a person of ordinary prudence in the judge's position, knowing all of the
facts known to the judge, might reasonably question the partiality of the judge, then the judge
must recuse himself.

While the words "bias" and "prejudice" are central to a determination on recusal, neither
term is defined in Tennessee caselaw as it relates to recusal. *Alley v. State*, 882 S.W.2d 810,
821 (Tenn. Crim. App. 1994). The terms generally refer to an attitude or state of mind that
predisposes a judge for or against a party. *Id.* (citing 46 Am. Jur. 2d "Judges" § 167 (1969));
*see also McKenzie*, 2014 WL 575908, at *3. Not every bias, partiality, or prejudice requires
recusal: "To disqualify, prejudice must be of a personal character, directed at the litigant,
'must stem from an extrajudicial source and result in an opinion on the merits on some basis
other than what the judge learned from . . . participation in the case.' " *Alley*, 882 S.W.2d at
821 (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. App. 1990)).

The sole issue in this appeal is recusal. We need not determine whether the *ex parte*
communications constitute a violation of RJC 2.9, only whether they mandate Judge Fields'
recusal in this case.[19] Generally, an *ex parte* communication requires recusal only where it

---

[19]On February 18, 2014, Mother filed a motion to supplement her Rule 10B recusal appeal and to consider
post-judgment facts, asking this Court to consider the documents filed and circumstances surrounding
(continued...)

creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process. *See Johnson v. Johnson*, No. M2002-00354-COA-R3-CV, 2003 WL 61249, at *4-5 (Tenn. Ct. App. Jan. 9, 2003) (although notice was not given to mother's counsel about administrative consultation between trial judge and father's counsel, the overriding issue was whether the judge's conduct created appearance of partiality); *Malmquist v. Malmquist*, 415 S.W.3d 826, 839-40 (Tenn. Ct. App. 2011) (upholding trial judge's denial of motion to recuse because "the record does not indicate any bias on the part of" the trial judge); *see also Powhatan Cemetery, Inc. v. Colbert*, 292 S.W.3d 302, 309-10 (Ark. Ct. App. 2009) (holding that trial court's *ex parte* discussions with counsel for appellees was not grounds for recusal because movant did not demonstrate bias); *Comiskey v. District Ct. In and for County of Pueblo*, 926 P.2d 539, 544 (Colo. 1996) (*en banc*, noting that "the mere allegation that a judge engaged in an *ex parte* communication is not enough to require recusal" and that "[t]he petitioner must also allege facts sufficient to infer that the judge is or appears to be biased"); *State v. Lotter*, 586 N.W.2d 591, 610 (Neb. 1998) (holding that "not all *ex parte* communications subject a judge to recusal" and "a trial judge must recuse himself or herself only when the *ex parte* communication poses a threat to the judge's impartiality").

In the case *sub judice*, despite a surfeit of innuendo, we find no *facts* in the record to support Mother's argument that the *ex parte* communications mandate Judge Fields' recusal. The transcript of the parties' parenting hearing was indeed voluminous. The facts indicate that Judge Fields was unable to locate her notes on the parties' testimony on a minor fact, tangential to the primary issue before the trial court, so she or her office contacted the GAL's office to clarify Judge Fields' recollection of the testimony.[20] That is all. Mother has presented no facts indicating that the subject of the communications was anything other than what Judge Fields said it was. A claim of bias or prejudice must be based on facts, not speculation or innuendo; Mother "must come forward with some evidence" to support her assertions of bias or partiality. *Eldridge v. Eldridge*, 137 S.W.3d 1, 7 (Tenn. Ct. App. 2002) (quoting *Davis v. Tenn. Dep't of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999)); *see Todd v. Jackson*, 213 S.W.3d 277, 282 (Tenn. Ct. App. 2006); *see also Walker v. People*, 248 P.2d 287, 295 (Colo. 1952) (*en banc*, holding that "[s]uspicion, surmise,

---

[19](...continued)

Mother's complaint to the Tennessee Board of Judicial Conduct. As this information is not pertinent to the issue in this appeal, Mother's motion is hereby denied.

[20]The GAL's decision to contact Father's counsel on whether Mother had a pool at her residence has no bearing on whether Judge Fields erred in denying Mother's motion for recusal. Mother's motion to excuse the GAL is not at issue in this Rule 10B appeal.

speculation, rationalization, conjecture, innuendo, and statements of mere conclusions of the pleader may not be substituted for a statement of facts"). Mother has failed to do so.[21]

Mother argues that the timing of the *ex parte* communications gives the impression that they influenced Judge Fields' decision on parenting issues. There is a difference, however, between an inference from facts on one hand, and insinuation based on mere speculation on the other. Mother's argument falls into the latter category. Again, all of the evidence in this record shows that the *ex parte* communications were only about whether Mother had a pool at her residence. Mother has presented no evidence to support any other conclusion. In the context of this case, whether Mother had a pool is inconsequential. The trial court's comprehensive parenting order states clearly that the trial court's decision was based on evidence that Mother had engaged in long-standing, insidious, emotional abuse of Daughter; not whether Mother had a pool or a pond.[22] ***See Clinard v. Blackwood***, 46 S.W.3d 177, 187 (Tenn. 2001) (with respect to disqualification of an attorney, suspicion of impropriety cannot be fanciful or unrealistic, the appearance of impropriety must be real; it is the "objective perception rather than the subjective and 'anxious' perceptions of the litigants that govern").

For these reasons, we must reject Mother's argument that the *ex parte* communications between Judge Fields and the GAL created an appearance that Judge Fields is biased, prejudiced, or partial to Father.

### Continued Display of Bias and Hostility

Mother also claims that, when combined with the improper *ex parte* communications, Judge Fields' "continued display of bias and hostility toward Mother and her counsel" mandated her recusal. In support, Mother contends that Judge Fields engaged in the following allegedly biased and hostile acts:

- conducted a "surprise" hearing on April 10, 2013, on Father's motion to require tutoring and denied Mother's request for a court reporter and an evidentiary hearing;

---

[21]Respectfully, the survey commissioned by Mother's counsel for this appeal has no probative value. Mother seeks to submit what is essentially evidence in the form of an opinion poll of anonymous members of the public on application of the "person of ordinary prudence" standard to the issue in this case. In recusal matters, the trial judge, and the appellate court on appeal, are to determine whether a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality. ***Bean v. Bailey***, 280 S.W.3d 798, 805 (Tenn. 2009). This is not done by opinion poll. Therefore, we decline to consider either the survey or its results.

[22]In a Rule 10B appeal such as this, we do not evaluate whether the trial court's parenting order was erroneous. As discussed below, that issue is for an appeal on the merits.

- used Mother's statements at the April 10, 2013 hearing to severely restrict Mother's parenting time;
- refused Mother's request to review the GAL's offer of proof, which consisted of a son's psychological records, and then relied on those records to restrict Mother's parenting time with Daughter;
- misstated facts and issues in the recusal order that were not germane to Mother's motion for recusal.

We dispatch with this argument. Consistent adverse rulings against a party may provide the impetus for the maligned party to wish for another trial judge. They do not, however, provide a basis for requiring the trial judge's recusal from the case.  Adverse rulings, "even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012) (quoting *Alley*, 882 S.W.2d at 821). "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Id.* (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)); *see also State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *Owens v. State*, 13 S.W.3d 742, 757-58 (Tenn. Crim. App. 1999).  In a case not unlike this one, the appellate court observed:

> No doubt [the mother] would like to have a different judge take over this case, since she has seen her court-mandated time with her daughter steadily reduced. But adverse rulings by a trial court are not in themselves sufficient grounds to establish bias. *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996). Also, where a court has been involved in a case for a very long time, recusal is not favored because of the expense and difficulty of starting over. *Dunlap v. Dunlap*, 996 S.W.2d 803 (Tenn. Ct. App.1998).

*Johnson*, 2003 WL 61249, at *5.

It is not lost on this Court that, in the face of adverse rulings, Mother twice unsuccessfully sought permission for interlocutory appeal and then seized upon a relatively minor transgression to insist that Judge Fields was obliged to recuse herself.  The pleadings and documents submitted in support of this appeal are voluminous.[23]  After the Court sifted through the mountain of paper, it appears that most of Mother's argument centers on matters that are more appropriate for the eventual appeal on the merits, not a Rule 10B appeal.  This

---

[23]The volume of materials filed with respect to this appeal undermines the intent under Rule 10B for an accelerated appeal only on the limited issue of recusal.

Court will not permit parties to litigate an appeal of the merits under the guise of a Rule 10B appeal on recusal.

Accordingly, we affirm the trial court's denial of Mother's Amended Motion to Recuse.

### Attorney Fees

On appeal, Father asks this Court for an award of attorney fees for his defense against Mother's motion to recuse in the trial court and also for his defense in this appeal.

Father cites no authority for his request that this Court award him attorney fees for the trial court proceedings on recusal. Father should direct any such request to the trial court; we decline to consider it.

As to Father's attorney fees for this appeal, "[a]n award of appellate attorney's fees is a matter within this Court's sound discretion." *Chaffin v. Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In adjudicating a request for attorney fees incurred on appeal, we consider the requesting party's ability to pay such fees, the party's success on appeal, whether the appeal was sought in good faith, and any other relevant equitable factors. *Id.* (citing *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at * 16 (Tenn. Ct. App. July 19, 2005)). Exercising our discretion, we decline to award Father his attorney fees incurred in this appeal.

### CONCLUSION

The decision of the trial court is affirmed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Appellant Melanie Fortner Runyon and her surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE