# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

## IN RE:  JOHN JAY HOOKER

No. M2009-01498-SC-OT-CV - Filed February 25, 2011
BPR Docket No. 2005P-1519-5-SG

**For Publication**

## ORDER

John Jay Hooker has filed a motion requesting this Court (1) to set aside its June 21, 2010 order directing the Clerk of the Appellate Courts to decline to accept any of his further filings in this case and (2) to rescind its January 7, 2010 order enforcing the October 20, 2008 order of the Chancery Court for Davidson County suspending his license to practice law for thirty days.[1]  Mr. Hooker has also requested that all the members of the Court recuse themselves from this proceeding because they "are prejudiced against him as a consequence of a contentious political dispute before the legislature . . . regarding the [c]onstitutionality of the [r]etention [e]lection [s]tatute."

In order to address Mr. Hooker's first two requests, the Court must first address his renewed insistence that all the members of this Court are disqualified from any proceedings involving his law license.

### I.
#### THE HISTORY OF THE PROCEEDINGS

For nearly two decades, Mr. Hooker has filed a series of lawsuits in the federal and state courts challenging the financing of elections by officials running for local, state, and federal office.  When these suits met with no success in the state trial and appellate courts, Mr. Hooker began challenging the authority of the state appellate courts to hear and decide his claims because he believed that the judges were not validly elected.  When these challenges did not succeed, Mr. Hooker began to accuse the trial and appellate judges who had considered and rejected his claims of engaging in unethical and criminal misconduct.

---

[1]The operable order of enforcement is actually the amended order of enforcement entered on February 12, 2010.

Mr. Hooker has filed at least two dozen lawsuits as part of his campaign to overturn the state laws governing the financing of campaigns for state and federal office. He has regularly pursued several of these lawsuits simultaneously in different courts. He has named over ninety different defendants in these suits, including two Presidents of the United States, ten United States Senators, four Governors, four Tennessee Attorneys General, eight Tennessee Supreme Court Justices, ten Tennessee Court of Appeals Judges, the Lieutenant Governor, the Speaker of the House, and twenty-one candidates for various offices.[2]

In the mid-1990s, Mr. Hooker initiated a series of lawsuits focusing on perceived violations of the "meat and drink" provision in Article X, Section 3 of the Tennessee Constitution. These suits were part of a broader litigation campaign initiated by Mr. Hooker in 1994 to challenge the system of financing elections for public office. Mr. Hooker insisted that any elected official in Tennessee, including members of the Tennessee General Assembly and candidates for other state and federal elective offices, violated the Tennessee Constitution whenever food or drink was served at one of their campaign events. Mr. Hooker's first attempt at purging political campaigns of food and drink resulted in a dismissal of his suit by the Davidson County Chancery Court in *Hooker v. McWherter*, No. 98-2246-III (Davidson Ch. July 31, 1998).

Mr. Hooker continued to file many similar suits against a wide variety of elected officials. It was one of these filings that created the first step in the process that eventually culminated in the suspension of Mr. Hooker's law license. On December 13, 2001, Mr. Hooker filed suit in the Circuit Court for Davidson County against Governor Don Sundquist, Lieutenant Governor John Wilder, Speaker Jimmy Naifeh, and Attorney General Paul Summers. These defendants moved to dismiss the complaint and requested Tenn. R. Civ. P. 11 sanctions. The circuit court initially declined to grant Rule 11 sanctions; however, the Court of Appeals reversed this decision and remanded the case to consider appropriate sanctions. *Hooker v. Sundquist*, 107 S.W.3d 532, 537 (Tenn. Ct. App. 2002).

On remand, the circuit court implemented a screening mechanism to "protect Mr. Hooker's ability to have meaningful access to the courts while preventing needlessly repetitive or frivolous litigation." The circuit court ordered that all of Mr. Hooker's filings in the circuit court would be reviewed to assure that they were not raising the same issues that had already been litigated and ruled upon repeatedly. Mr. Hooker objected to the screening mechanism, but the Court of Appeals upheld it, noting the need to ensure that

---

[2]In addition to these defendants, Mr. Hooker has sued the Secretary of State, the Coordinator of Elections, the Executive Director of the Registry of Election Finance, the members of the Judicial Selection Commission, the members of the Judicial Evaluation Commission, the Federal Election Commission, the Democratic National Committee, and the Republican National Committee.

courts' dockets would not be glutted by repeated frivolous filings. *Hooker v. Sundquist*, 150 S.W.3d 406, 413-14 (Tenn. Ct. App. 2004).

In response, Mr. Hooker filed an invective-laden complaint in the Circuit Court for Davidson County seeking $3 million in punitive damages from the circuit court judge who imposed the screening mechanism and from each of the three Court of Appeals judges who upheld the screening mechanism. The defendants sought dismissal of this complaint and also requested Tenn. R. Civ. P. 11 sanctions.

The circuit judge to whom this case was assigned characterized Mr. Hooker as "an unrepentant . . . litigant who files frivolous lawsuits on top of frivolous lawsuits using the most baseless invectives." Accordingly, the judge dismissed the suit and extended the duration of the process to screen Mr. Hooker's future lawsuits. The Court of Appeals affirmed the trial court's decision. *Hooker v. Crawford*, No. M2005-00052-COA-R3-CV, 2006 WL 140379, at *3 (Tenn. Ct. App. Jan. 17, 2006), *perm. app. denied* (Tenn. Sept. 5, 2006).

The circuit judge also sent a copy of the court's order to the Tennessee Board of Professional Responsibility. In response to the disciplinary counsel's request for a response, Mr. Hooker asserted that the circuit judge was "dishonest" and suggested that he should be indicted. Following an investigation, disciplinary counsel filed a disciplinary petition against Mr. Hooker. A hearing panel conducted a hearing and, on December 17, 2007, issued a judgment finding that Mr. Hooker had violated Tenn. Sup. Ct. R. 8, RPC 3.1, 8.2(a), and 8.4(d).[3] The hearing panel determined that Mr. Hooker should be publically censured.

---

[3]These rules promote professionalism and civility in the practice of law. RPC 3.1 provides that a lawyer must not "continue to assert . . . an issue . . . unless after reasonable inquiry the lawyer has a basis for doing so that is not frivolous." RPC 8.2(a) provides that a lawyer must not "make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of" a judge or a public legal officer. Under RPC 8.4(d), a lawyer engages in professional misconduct when the lawyer "engage[s] in conduct that is prejudicial to the administration of justice."

The purpose and application of these rules of professional conduct are similar to the rules and procedures governing the conduct of members of the Tennessee General Assembly. *See* Office of the Chief Clerk of the Senate, Temporary Rules of Order of the Senate for the 106th General Assembly R. 15, 16 (As amended Jan. 12, 2010); Ad Hoc Committee on Rules, Temporary Rules of Order of the House of Representatives for the 106th General Assembly R. 18, 19, 28 (Jan. 12, 2009). One of the principles of debate reflected in the rules of the Senate and House of Representatives is that comments and questions during debate should not "reflect[] upon the character or conduct of any member [of the body] or upon the executive or other official." The Am. Soc'y of Legis. Clerks & Secretaries, Nat'l Conference of State Legs., *Mason's Manual of Legislative Procedure* § 114(5), at 84 (rev. ed. 1989) ("*Mason's Manual*") (both the Senate and the House of Representatives consider *Mason's Manual* to be an authoritative supplement to their

(continued...)

Both Mr. Hooker and disciplinary counsel sought judicial review of the hearing panel's decision in the Chancery Court for Davidson County. A special judge was appointed to review the hearing panel's decision. In an order filed on October 21, 2008, the special judge found:

> The Respondent [Mr. Hooker] has made a polite, gracious and eloquent argument before both the Hearing Panel and this Court in summarizing his actions in filing the above-mentioned lawsuits. His argument consists of his efforts on behalf of the sovereign people of Tennessee to oppose clear violations of the Tennessee Constitution by elected officials. The gravamen of his argument is that Respondent is discharging his role as an attorney interpreting the Tennessee Constitution. He insists that his lawsuits are not frivolous, but his actions are based on his perceived role as a "whistle blower." Respondent further proclaims that if in the discharge of these duties, he is censured, he would consider such censure a badge of honor. The Respondent does not clearly articulate which of the five ground[s] for reversal or modification he relies upon. The Court surmises that his argument rests upon the assertion that the Hearing Panel's findings that his lawsuits were not meritorious are not supported by evidence that is both substantial and material. Thus, as a Constitutional warrior for the people, his lawsuits cannot be frivolous because he is convinced that prior court rulings were erroneous. Respectfully, Respondent's entire argument misses the point.

> The proceeding is not about an attorney's right to zealously litigate the constitutionality of various provisions of the Tennessee Constitution, nor is it about the retention system in Tennessee for appellate judges. This proceeding is not about an attorney's privilege to be the guardian of the rights of the sovereign people of Tennessee. This proceeding concerns the question of whether an attorney in the discharge of these perceived "roles" is subject to the Rules of Professional Responsibility as promulgated by the Tennessee Supreme Court.

---

[3](...continued)
rules). Similarly, legislators may not use "indecent language with reference to the body or its members." *Mason's Manual* § 123, at 88. Article II, Section 12 of the Tennessee Constitution gives the Senate and the House of Representatives exclusive authority to punish their members for disorderly conduct.

With this principle in mind, the Court will examine the findings of the hearing panel.

After reviewing the record, the special judge concurred with the hearing panel's conclusion that Mr. Hooker had violated Tenn. Sup. Ct. R. 8, RPC 3.1, 8.2(a), and 8.4(d). However, after considering the punishments imposed on other Tennessee lawyers for similar offenses, the special judge concluded that, instead of receiving a public censure, Mr. Hooker's law license should be suspended for thirty days.

Even though Mr. Hooker filed a timely notice of appeal from the special judge's order suspending his license to practice law for thirty days, he declined to take all the other steps required to perfect his appeal. Instead, he filed numerous motions with this Court stating that he would decline to perfect his appeal unless all of the members of the Court recused themselves from the case. Mr. Hooker asserted that all the justices were biased because he opposed the manner by which they were appointed and retained in office. In a March 7, 2008 order, the members of the Court declined to recuse themselves, stating that "[d]espite Mr. Hooker's assertions to the contrary, the issue in this appeal concerns the disciplinary sanction imposed upon Mr. Hooker, not the constitutionality of [retention elections]."

Mr. Hooker was afforded numerous opportunities to perfect his appeal from the trial court's order suspending his law license for thirty days, but he declined to do so. Accordingly, this Court never considered the substantive validity of the suspension of his license to practice law. As a result of Mr. Hooker's procedural default, disciplinary counsel requested the Tennessee Supreme Court to issue an order of enforcement. The Court filed this order on January 7, 2010. In response to disciplinary counsel's motion to alter or amend the order of enforcement, the Tennessee Supreme Court issued an amended enforcement order on February 12, 2010.

Despite the finality of the Court's February 12, 2010 order, Mr. Hooker continued to file motions and other papers demanding that this Court rescind its February 12, 2010 order and reinstate his appeal. He also insisted that all members of the Court recuse themselves so that his appeal would be heard by a panel of judges more acceptable to him. The Court denied these motions. Finally, on June 21, 2010, the Court filed an order directing the Clerk of the Appellate Courts to decline to accept any further filings from Mr. Hooker in this case.

In addition to pursuing an appeal from the special judge's order suspending his license to practice law, Mr. Hooker filed a complaint with the Tennessee Court of the Judiciary on April 5, 2010. He alleged that "each member of the Court . . . violated . . . the Canons of Judicial Ethics . . . for their economic 'benefit' by failing to recuse themselves on motion when they had an economic 'interest' in the subject matter of the motion claiming that these

Judges are unconstitutionally seated." Mr. Hooker also accused the members of the Court of committing a Class E felony.

The Court of the Judiciary's disciplinary counsel summarily dismissed Mr. Hooker's complaint. When Mr. Hooker appealed from the summary dismissal of his complaint, the Court of the Judiciary referred the matter to an Investigative Panel of the Court. Following the panel's review of the complaint, the Court of the Judiciary notified the members of the Tennessee Supreme Court on June 16, 2010 that the panel had affirmed the dismissal of the complaint and that the Court of the Judiciary had closed the case.

## II.
### DISQUALIFICATION OF THE COURT

Mr. Hooker's motion contains multiple claims for relief. This Court cannot consider his requests for substantive relief without first considering his request that all of the members of the Court disqualify themselves from this case. We have previously considered Mr. Hooker's requests that we disqualify ourselves and have found these requests to be without merit. However, we will again address this issue.

### A.

Motions for recusal call into question the integrity of the judicial process and require serious and careful consideration. Persons appearing in Tennessee's courts have a fundamental right to have their cases heard and decided by fair and impartial judges. *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009); *Chumbley v. People's Bank & Trust Co.*, 165 Tenn. 655, 659, 57 S.W.2d 787, 788 (1933). This right "guard[s] against the prejudgment of the rights of litigants and [assists in] avoid[ing] situations in which the litigants might have cause to conclude that the court . . . reached a prejudiced conclusion because of interest, partiality, or favor." *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002) (appendix).

To protect this right, Article VI, Section 11 of the Constitution of Tennessee states that judges should not preside over trials in which they "may be interested." Likewise, Tenn. Sup. Ct. R. 10, Canon 2(A) states that judges "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Accordingly, Tenn. Sup. Ct. R. 10, Canon 3(E)(1) admonishes that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

Disqualification decisions are discretionary ones. *Bean v. Bailey*, 280 S.W.3d at 805; *Bd. of Prof'l Responsibility v. Slavin*, 145 S.W.3d 538, 546 (Tenn. 2004). They do not, however, rest solely on a judge's own subjective perception of his or her ability to act fairly and impartially. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); *Collier v.*

*Griffith*, No. 01A01-9109-CV-00339, 1992 WL 44893, at *5 (Tenn. Ct. App. Mar. 11, 1992) (No Tenn. R. App. P. 11 application filed). Rather, a more objective standard must be used. *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008); *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001). The objective standard consistently used by Tennessee's courts is that recusal is warranted only "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)); *see also Bean v. Bailey*, 280 S.W.3d at 805; *State v. Cannon*, 254 S.W.3d at 307.

**B.**

We have again analyzed the basis for Mr. Hooker's disqualification claims in light of these principles and in light of the details of the extensive public record of all the proceedings involving Mr. Hooker. We again find these claims to be objectively without merit, and we have determined that no reasonable ground for the disqualification of any of the members of the Court has existed or currently exists. Our decision rests on four factors.

First, as a matter of law, no member of this Court has a disqualifying interest in the case of *Tennessee Board of Professional Responsibility v. Hooker*. This case involves only two issues. The first issue is whether the record contains substantial and material evidence supporting the hearing panel's and trial court's conclusion that Mr. Hooker violated Tenn. Sup. Ct. R. 8, RPC 3.1, 8.2(a), and 8.4(d) in 2004 based on allegations in papers he filed in the Circuit Court for Davidson County regarding certain trial and appellate judges. None of the comments in these papers were directed at a member of this Court. The second issue is whether the special judge's decision to suspend Mr. Hooker's license to practice law is supported by substantial and material evidence. The ultimate disposition of these issues did not and does not require the Court to address the constitutional validity of the manner in which judges are elected and retained in Tennessee.

No reasonable person familiar with the practice of law could conclude that the members of this Court have any personal interest in Mr. Hooker's law license. None of the members of this Court have personal knowledge of the facts of this case other than the facts appearing in the public records of the courts. Finally, no member of this Court has in the past exhibited or entertained personal bias or prejudice against Mr. Hooker in any of their personal or professional dealings with him. The Tennessee Court of the Judiciary reached the same conclusion when it dismissed Mr. Hooker's complaint challenging the Court's denial of his recusal motion in this case.

Second, Mr. Hooker's refusal to follow the generally applicable rules for obtaining judicial review of the trial court's decision is the sole reason he has not obtained appellate

review of the special judge's decision to suspend his license to practice law for thirty days. Despite being provided numerous opportunities to remedy his oversights, Mr. Hooker has declined and continues to decline to abide by the rules that all other litigants and lawyers must follow in order to obtain appellate review of a disciplinary order.

Third, discussions between judges and legislators regarding the manner in which Tennessee's judges are chosen are encouraged and are not unethical. The Code of Judicial Conduct, Tenn. Sup. Ct. R. 10, Canon 4(B) states that "[a] judge may speak, write, lecture, teach, and participate in other extra-judicial activities concerning the law, the legal system, the administration of justice, and non-legal subjects, subject to the requirements of this Code." In addition, Tenn. Sup. Ct. R. 10, Canon 4(C)(1) states that a

> judge shall not appear at a public hearing before, or otherwise consult with, an executive or legislative body or official except on matters concerning the law, the legal system, or the administration of justice or except when acting pro se in a matter involving the judge or the judge's interests.

The Judicial Ethics Committee of the Tennessee Judicial Conference has concluded:

> In brief, this committee is asked whether judges are permitted to speak and write on the history, background, or interpretation of certain sections of the Tennessee Constitution; as to the power of the Tennessee General Assembly to prescribe the manner in which judges are selected and elected; and the pros and cons of different methods of selecting judges. It is clear that each of these topics is within the scope of Canon 4B and, as the Commentary to that section states, judges are, in fact, encouraged to speak and write on these and similar topics regarding the law. In this regard, the Code of Judicial Conduct does not limit the forums. Therefore, judges may speak and write on these topics for members of the legislature, the executive branch officials, bar groups, as well as other forums.

The Court of the Judiciary has also received and reviewed the judges' invited communications with members of the General Assembly regarding the selection of judges and has reached the same conclusion as the Judicial Ethics Committee.

Fourth, this is not the first case in which a lawyer's belief in the justness of the cause has resulted in the lawyer's refusal to heed the basic rules of civility and professionalism that

are the hallmarks of the practice of law.[4]  Despite the undoubted sincerity of Mr. Hooker's beliefs, a litigant's or lawyer's disagreement with the election of a judge has never been found to be an adequate basis for disqualifying a judge from a proceeding that does not directly involve the judge's own election.

There is no precedent in Tennessee or elsewhere supporting the idea that otherwise qualified judges must be disqualified whenever a litigant or lawyer disagrees with the manner in which they were placed on the bench.  Allowing litigants to challenge judges based on dissatisfaction with their election would hamstring the courts and disrupt our system of justice.  In addition, recognizing such a ground of disqualification for judges will only prompt others to challenge or ignore acts of the Legislative or Executive Branches of government based on their disagreement with the manner in which these officials have been elected.

## C.

Based on these factors, the Court finds that no objective basis exists for requiring the disqualification of this Court, or any member of this Court, from hearing and deciding Mr. Hooker's case.  Based on all the public facts, the Court concludes that a person of ordinary prudence, knowing all the facts, would not have a reasonable basis for questioning the impartiality of the members of the Court.  Accordingly, as it has in the past, this Court respectfully denies Mr. Hooker's motion requesting the members of this Court to recuse ourselves from this case.

## III.
### THE JUNE 21, 2010 ORDER

Mr. Hooker also requests this Court to set aside its June 21, 2010 order directing the Clerk of the Appellate Courts to decline to accept any further filings from Mr. Hooker in this case.  The purpose of this order was to prevent Mr. Hooker from continuing to file papers seeking relief on grounds that had already been found to be without merit.  The order does not apply to claims for relief that have arisen since the entry of the February 12, 2010 order.

On December 20, 2010, this Court handed down an opinion in *Board of Professional Responsibility v. Cawood*, ___ S.W.3d ___, 2010 WL 5141785 (Tenn. Dec. 20, 2010).  Noting that Tenn. Sup. Ct. R. 9, § 1.3 requires persons seeking judicial review of a hearing panel's decision to file a petition "in the manner provided by T.C.A. § 27-9-101 et seq., except as otherwise provided herein," we held that all petitions for a writ of certiorari must

---

[4]*See, e.g.*, *State ex rel. Inman v. Brock*, 622 S.W.2d 36, 47-51 (Tenn. 1981); *Ward v. Univ. of the South*, 209 Tenn. 412, 417-19, 354 S.W.2d 246, 248-49 (1962).

comply with the requirements of Tenn. Code Ann. § 27-8-106 (2000) and that petitions that fail to comply with these requirements deprive the reviewing court of jurisdiction to hear the appeal. *Bd. of Prof'l Responsibility v. Cawood*, ___ S.W.3d at ___, 2010 WL 5141785, at *2.

Mr. Hooker's current challenge to the February 12, 2010 order of enforcement is based on *Board of Professional Responsibility v. Cawood*. Thus, a portion of his January 14, 2011 papers request relief that has not been previously addressed and found to be without merit. Accordingly, we have determined that this Court's June 21, 2010 order does not apply to these papers. Thus, it would be appropriate for the Clerk of the Appellate Courts to accept and file the motion presented by Mr. Hooker on January 14, 2011. In all other respects, this Court's June 21, 2010 order shall remain in effect.

## IV.
### THE FEBRUARY 12, 2010 ORDER OF ENFORCEMENT

Finally, Mr. Hooker requests this Court to rescind the February 12, 2010 order of enforcement and the trial court's October 20, 2008 order suspending his license to practice law for thirty days based on this Court's holding in *Board of Professional Responsibility v. Cawood*. The case is currently not in a posture that permits this Court to address this issue. We do not have before us copies of the papers filed either by Mr. Hooker or the Board of Professional Responsibility seeking judicial review of the hearing panel's decision, and neither Mr. Hooker nor the Board of Professional Responsibility have prepared and filed briefs regarding whether Mr. Hooker may now collaterally attack an order of enforcement that became final on February 12, 2010 on grounds that he did not raise in the trial court or this Court before the order of enforcement was entered.

## V.
### ORDERS

It is, therefore, ordered that the Clerk of the Appellate Courts is directed to accept and file the motion lodged by Mr. Hooker on January 14, 2011.

It is further ordered that Mr. Hooker's motion requesting all the members of this Court to recuse themselves from this proceeding is denied.

It is further ordered that within forty-five (45) days from the entry of this order, Mr. Hooker shall obtain and file with the Clerk of the Appellate Courts certified copies of the papers that both he and the Board of Professional Responsibility filed in the Chancery Court for Davidson County seeking judicial review of the hearing panel's December 17, 2007 findings of fact and conclusions of law.

It is further ordered that within forty-five (45) days following the entry of this order, Mr. Hooker shall prepare and file a brief complying with all the requirements of Tenn. R. App. P. 27(a) and other applicable rules. The brief shall contain a full and complete analysis of all the issues relating to whether he should be permitted to collaterally attack the February 12, 2010 order of enforcement based on *Board of Professional Responsibility v. Cawood* and, if he is permitted to do so, the procedure that should be followed.

It is further ordered that the Board of Professional Responsibility shall file its brief in accordance with Tenn. R. App. P. 27(b) within forty-five (45) days following the filing of Mr. Hooker's brief.


PER CURIAM


CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., concurring in the order.