FILED
05/02/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 5, 2018 Session

## KAREN H. FOSTER v. DOUGLAS S. FOSTER

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVDI06-86    Laurence M. McMillan, Jr., Chancellor**

———————————————————

### No. M2018-00595-COA-R3-CV

———————————————————

This is the second appeal in a post-divorce proceeding involving the computation of Wife's portion of Husband's military retirement pay. In the first appeal, we affirmed the trial court's computation and remanded the case for further proceedings. On remand, the trial court assessed the arrearage of retirement pay that had accrued during the pendency of the appeal and awarded Wife her attorney's fees. Husband appeals, contending that the trial court lacked subject matter jurisdiction and that Wife lacked standing to raise the issue of calculation of military retirement pay; Husband also raises numerous other issues related to the propriety of the judgment that was at issue in the first appeal, each party's entitlement to attorney's fees, and the trial court's denial of two motions to recuse itself. We vacate the award of attorney's fees for services rendered in another proceeding, and affirm the judgment in all other respects; we award Wife her attorney's fees incurred in this appeal and remand the case for a determination of the amount to be awarded.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court for Montgomery County Vacated in Part and Affirmed in Part; Case Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Douglas S. Foster, Ashland City, Tennessee, Pro Se.

Mark A. Rassas and Julia P. North, Clarksville, Tennessee, for the appellee, Karen H. Foster.

**OPINION**

### I.   FACTUAL AND PROCEDURAL HISTORY

The parties were divorced by a Final Decree for Absolute Divorce entered in April of 2006, which incorporated a Marital Dissolution Agreement (MDA); paragraph 6 of that MDA stated:

> The parties mutually acknowledge that they have been married during thirteen (13) years (156 months) of Husband's active military service and that he now holds the rank of Captain (03). In the event Husband should retire from the military at the rank of Captain or at a higher rank and thereby becomes eligible for retired military pay, the parties agree that the Wife shall have 33% of the Husband's disposable retirement pay at the grade of Captain and that said amount shall be payable for a period of thirteen (13) years (156 months) regardless of whether the Husband attains a higher rank than Captain. It is the express intent of the parties that the Wife shall only be entitled to 33% of Husband's disposable military retirement pay for thirteen years (156 months) at the rank of Captain and Wife forever releases Husband of any further payments. In the event that the Husband draws disability payments that reduce his retirement benefits, this will in no way reduce the Wife's entitlement as stated above.

On January 19, 2016, Wife petitioned to hold Husband in contempt, alleging that Husband had not complied with the requirement in the MDA that she receive a portion of his military retirement. Wife asserted that her portion of Husband's benefits should be 33 percent of the actual retirement benefits Husband received; Husband argued that increases in military retirement pay that occurred after the divorce were not marital property and that an award should therefore be calculated as of the date of the divorce. The trial court entered an order on July 26, 2016 ("July 26 Order"), ruling that Wife was entitled to 30.478 percent of Husband's actual retirement pay; Husband appealed the ruling. On July 14, 2017, this Court affirmed the trial court's decision, awarded Wife attorney's fees for the appeal, and remanded the case for a determination of the amount. *Foster v. Foster*, No. M2016-01749-COA-R3-CV, 2017 WL 2992979 (Tenn. Ct. App. July 14, 2017).

On September 18, 2017, Wife filed a Motion to Assess Attorney's Fees and Arrearage, supported by the affidavit of her attorney, Mark A. Rassas, to which Husband responded. The trial court heard the motion on November 3 and entered an order that day, awarding Wife $8,541.87: $5,108.87 for the costs of Mr. Rassas's representation in the appeal; $1,210.00 for Mr. Rassas' representation in a separate action filed in Wilson

2

County;[1] and $2,223.00 for "post-trial fees through the date of hearing." The court referred the computation of the arrearage that accrued while the case was on appeal to the Clerk and Master, who filed a report on January 8, 2018, computing the arrearage to be $11,765.74. The trial court entered an order adopting the Master's Report and awarding Wife a judgment for that amount on March 2.

On September 25, 2017, appearing *pro se*, Husband moved the court to vacate the July 26, 2016 Order; Wife responded, and the motion was heard on March 2, 2018. The court denied the motion on March 2 and an order was entered on March 9 awarding Wife attorney's fees of $570.00 for defending the motion.

On March 16, 2018, Husband moved the court to recuse itself; Wife responded, and the court entered an order on March 29, denying the motion on the ground of mootness because the court had ruled on all issues in the case. Husband moved for recusal a second time on April 25; the court denied the motion by order entered May 3.

Husband appeals, raising a plethora of issues[2] related to the rulings on his Motion to Vacate the July 26, 2016 Order, his motions to recuse, and Wife's September 18, 2017 Motion for Attorney's Fees.

---

[1] Husband's current wife filed suit in Wilson County Circuit Court ("Wilson County action") on February 28, 2017, challenging a garnishment Wife filed on funds in a bank account owned by Husband and his current wife to collect the judgment in the July 2016 Order.

[2] The issues as stated by Father are:

1. The court is required, under Tenn. R. Civ. P. 12.08, to dismiss an action whenever it appears by suggestion or otherwise that the court lacks subject matter jurisdiction. Instead, the trial court dismissed a Rule 60.02(3) Motion to Vacate, containing multiple examples the court lacked subject matter jurisdiction in the void Order. Did the trial court err in dismissing the Motion to Vacate a void judgment?
2. The trial court Order of July 26, 2016, is the foundational order in this case; is the Order void?
3. The trial court has no jurisdiction to enforce an unenforceable contract. Is the Order void where the agreement in question was unenforceable to begin with?
4. Without lawful, constitutional standing or a justiciable cause of action, there is no jurisdiction. Is the Order void for a judgment in which there was no cause of action to support the judgment?
5. A judgment that violates a statute is outside the jurisdiction of the court, and Congress alone may make laws regarding military retirement including laws regarding payments from such to former spouses, and all such laws preempt any state domestic relations laws. The "2015 retirement pay chart" used in the court Order is inconsistent with controlling federal law. Is the Order void for violating federal statutes or state laws?
6. A judgment that is beyond the scope of the pleadings is beyond the jurisdiction of the court. Is the Order void for being beyond or in excess of the scope of the pleadings?
7. Under the U.S. and Tenn. Constitutions, a person will not be deprived of a right to property but by due process of law. The trial court awarded a portion of Mr. Foster's

3

## II.   ANALYSIS

### A.   Law of the Case

In his Motion to Vacate the July 26 Order, Husband asserted five reasons the trial court lacked jurisdiction: "(1) the court lacks jurisdiction over an unenforceable contract; (2) the court lacks jurisdiction to calculate the respondent's military retirement; (3) the court lacks jurisdiction to calculate the petitioner's award; (4) the court lacks jurisdiction to redefine federally defined terms; and, (5) the court rendered a judgment beyond the scope of the pleadings." On appeal, Husband raises those issues, along with a number of others related to the July 26 Order; his attempt to raise issues resolved in and related to the July 26 Order implicates the law of the case doctrine. Our Supreme Court has described that doctrine and set forth factors for its application:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and

---

retirement to Ms. Brooks based on a document not in evidence and upon which Mr. Foster was never heard. Is the Order void for violating constitutional rights or protections?

8. A judgment which changes valid parts of a contract or agreement without the express consent of the parties is beyond the jurisdiction of the court. Is the Order void for violating the parties' agreement or for changing valid parts of the agreement?

9. A judgment is not valid unless supported by evidence, with sufficient findings of fact and conclusions of law to support the judgment. Is the Order void for insufficient evidence or findings of fact or conclusions of law to support the extent of the Order?

10. Did the trial court err in not applying all relevant and outcome-changing evidence or oral testimony?

11. Tenn. R. Civ. P. 15.02 authorizes amended pleadings to conform to the evidence; it does not authorize amending evidence to conform to the pleadings. The Order is based entirely on a document not offered, and certainly not admitted into, evidence. Is the trial court Order void where Rules of Evidence were not followed and the Order was not based on evidence of record?

12. A judgment that is procured through a fraud upon the court is void. Is the Order void for a fraud committed upon the court?

13. Did the judge err in not recusing himself?

14. Marital property is held as Tenancy by the Entirety property in Tennessee. Did the trial court err in releasing garnished funds to Ms. Brooks that were taken from a joint marital bank account, in which one of the account holders is not a party to this case?

15. Did the trial court err in awarding attorney fees from another case in another county and court against Mr. Foster?

16. Is the nature of Mr. Foster's obligation under the MDA that of a property settlement or of a form of alimony?

17. Does Mr. Foster have a right to attorney[']s fees in this case in accordance with the MDA?

appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. The doctrine does not apply to dicta.

* * *

Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. There are limited circumstances which may justify reconsideration of an issue which was issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

*Memphis Pub. Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (citations omitted).

The issues that Husband raise—including the enforceability and interpretation of the MDA, federal preemption, the scope of relief granted, due process, the admissibility of evidence offered in the hearing held before the July 26 Order was entered, fraud, the classification of the retirement as alimony, and all other issues related to the July 26 Order—are all precluded under the law of the case doctrine. This Court affirmed the July 26 Order in the first appeal. Husband has not alleged matters which arose after the order in the first appeal or presented evidence to show any of the limited circumstances that might justify departure from the law of the case doctrine. Accordingly, we deem Husband's issues one through twelve and sixteen to be without merit and discern no error in the court's denial of Husband's Motion to Vacate.

Notwithstanding our determination relative to the preclusive effect of the law of the case doctrine on issues raised by Husband, because the threshold issues of whether the trial court had subject matter jurisdiction of and whether Wife had standing to bring the January 19, 2016, contempt petition were not directly raised in the first appeal, we will address those issues.

## B.    Subject Matter Jurisdiction

The determination of subject matter jurisdiction is a "threshold inquiry." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012); *Benson*

5

*v. Herbst*, 240 S.W.3d 235, 239 (Tenn. Ct. App. 2007) ("[W]hen a court's subject matter jurisdiction is challenged, the first order of business is to ascertain the nature or gravamen of the case."). "A court derives its subject matter jurisdiction, either explicitly or by necessary implication, from the Tennessee Constitution or from legislative acts." *Benson*, 240 S.W.3d at 239. Our Supreme Court has further explained Tennessee courts' sources of subject matter jurisdiction:

> The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought. Thus, when a court's subject matter jurisdiction is challenged, the first order of business is to ascertain the nature or gravamen of the case. Then, the court must determine whether the Tennessee Constitution or the General Assembly has conferred on it the power to adjudicate cases of that sort. Both determinations involve questions of law which this court reviews de novo without a presumption of correctness.

*Id*.

The gravamen of this action is divorce; Chancery courts are vested with jurisdiction to hear divorce actions at Tennessee Code Annotated section 16-11-110. The specific issue presented involves the division of marital property, which is governed by section 36-4-101, *et seq*. The trial court properly exercised jurisdiction in this divorce action.

The contempt petition filed by Wife sought to secure Husband's compliance with the provision of the MDA that had been made an order of the court. The Tennessee General Assembly has empowered the courts of this state to inflict punishments for contempt of court. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008). One of the statutory provisions enacted by the Legislature allows a charge of contempt for the "willful disobedience or resistance of any officer of the such courts, . . . to any lawful . . . order, . . . or command of such courts." Tenn. Code Ann. § 29-9-102(3). The trial court had subject matter jurisdiction of the proceeding.

### C.    Standing

Husband also argues that the trial court should have granted his Motion to Vacate the July 26 Order because Ms. Foster lacked standing when she filed the Petition for Contempt that led to the July 26 Order. This argument is without merit.

To show that a party has standing, that party must satisfy "three 'indispensable' elements." *Am. Civil Liberties Union of Tennessee v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006). We described those elements in *City of Memphis v. Hargett*:

First, a party must show an injury that is "distinct and palpable"; injuries that are conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general citizenry are insufficient in this regard. Second, a party must demonstrate a causal connection between the alleged injury and the challenged conduct. While the causation element is not onerous, it does require a showing that the injury to a plaintiff is "fairly traceable" to the conduct of the adverse party. The third and final element is that the injury must be capable of being redressed by a favorable decision of the court.

414 S.W.3d 88, 98 (Tenn. 2013) (citations omitted).

Wife's contempt petition asserted that Husband was not paying her the military retirement benefits pursuant to the terms of the MDA, as incorporated into the court order; this is an allegation of a "distinct and palpable injury" which is sufficient to establish the first element of standing. Second, Wife established the second element of standing by alleging that Husband was responsible for paying her a portion of his retirement benefits and had failed to do so. Lastly, the trial court was able to redress Wife's injury by interpreting the MDA and enforcing the order adopting the agreement. Accordingly, we conclude that Wife had standing to bring her petition for contempt.

### D. Recusal

Husband filed his first Motion to Recuse on March 16, 2018, two weeks after the trial court had entered its final order; the motion was filed pursuant to Rule 10B of the Rules of the Supreme Court, and alleged that various rulings and other actions taken by the court from July 26, 2016, through November 3, 2017, violated Rule of Judicial Conduct ("RJC") 2.11,[3] 2.15(B) and (D),[4] 2.2,[5] 2.3,[6] and 2.6.[7] The trial court denied the

---

[3] RJC 2.11 states:

(a) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

[4] RJC 2.15 (B) and (D) state:

**(B)** A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate

7

motion, holding that it was moot because the court had issued its final judgment. On April 25, Husband again moved the court to recuse itself, reiterating the previous grounds and asserting that the court gave Mother's counsel "great leeway in his submissions to the court and in not being held to legal standards of evidence among others," and that such actions violated RJC 2.11, 2.6 and 2.15 (B) and (D); the court denied the motion and entered an order in accordance with Rule 10B.

We review the trial court's recusal decision "under a *de novo* standard of review." Tenn. Sup. Ct. R. 10B, § 2.01. "The party seeking recusal bears the burden of proof." *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015). "[T]he test for determining whether a Chancellor's impartiality might reasonably be questioned is, and must be, an objective one;" "the test for determining whether an appearance of impartiality exists is whether a 'person of ordinary prudence in the Chancellor's position, knowing all of the facts known to the Chancellor, would find a reasonable basis for questioning the Chancellor's impartiality.'" *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *2 (Tenn. Ct. App. Feb. 11, 2014) (quoting *In re Hooker,* 340 S.W.3d 389, 395 (Tenn. 2011)) (citations omitted). Our Court has further described from where the alleged bias must arise to give merit to an assertion of bias:

authority.

* * *

**(D)** A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action.

[5] RJC 2.2 states:

A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially.

[6] The pertinent portion of RJC 2.3 cited by Husband states:

(A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

* * *

(C) A judge shall require lawyers in proceedings before the court to refrain from manifesting bias or prejudice, or engaging in harassment, based upon attributes including but not limited to race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, against parties, witnesses, lawyers, or others.

[7] RJC 2.6 states in pertinent part:

(A) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.

Generally, in order to justify recusal, any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case. If the bias is alleged to stem from events occu[r]ring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.,* that the bias is so pervasive that it is sufficient to deny the litigant a fair trial.

*McKenzie*, 2014 WL 575908, at *3. Further:

"A trial judge's adverse rulings are not usually sufficient to establish bias." *Cannon*, 254 S.W.3d at 308 (citing *Alley*, 882 S.W.2d at 821). Even rulings that are "erroneous, numerous and continuous, do not, without more, justify disqualification." *Id.* (quoting *Alley*, 882 S.W.2d at 821). There is good reason for this proposition: "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Davis*, 38 S.W.3d at 565.

*Boren v. Hill Boren, PC*, 557 S.W.3d 542, 550 (Tenn. Ct. App. 2017).

At the outset, we address the court's denial of the first motion on the grounds of mootness. The motion was made on March 16, 2018, two weeks after the two orders entered on March 2, one which adopted the Master's Report and awarded Wife judgment for $11,765.74, and the other which denied Husband's Motion to Vacate the July 26 Order. At the time the motion to recuse was filed there was no matter pending before the court. In the denying the motion, after detailing the post-remand history of the case, the court held:

Following a hearing on Friday, March 2, 2018, this court entered an order adopting the Master's Report and awarding a judgment against the Defendant for military retirement arrearage. A separate order was also entered on March 2, 2018 denying the Defendant's Motion to Vacate Void Judgment and granting the Plaintiffs Request for Attorney Fees. This ruling concluded all pending issues in the matter and was entered as a final judgment and closing order. As this matter is now closed and there is nothing further for this court to decide, the Motion to Recuse Chancellor Laurence M. McMillan, Jr., is hereby denied as moot.

In order for a court to rule on a matter, the case must remain justiciable throughout the entire course of litigation, including appeal. *Alliance for Native American Indian Rights in Tennessee, Inc. v. Nicely et al.*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005);

9

*State v. Ely*, 48 S.W.3d 710, 716, n.3 (Tenn. 2001). A case is not justiciable if it does not involve a genuine, continuing controversy requiring the adjudication of presently existing rights. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998). A moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy. *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). We agree with the trial court that, at the motion was filed, the case was not justiciable and, consequently, the motion seeking the court's recusal was moot.

Some of Husband's arguments relating to the Chancellor's impartiality are actually thinly veiled attacks on the merits of the Court's decision. As discussed in section II (A), *supra,* there is no error in the rulings of the trial court. Accordingly, Husband's argument that the Chancellor should have recused himself because the rulings against Husband violated the law and his constitutional rights is without merit.

Husband argues in his brief, as well as in his second motion to recuse in the trial court, that the Chancellor's impartiality can reasonably be questioned because:

> From all reasonable inferences, Judge McMillan is protecting Mr. Rassas from being held accountable for his actions. Judge McMillan's previous Chancery Court Clerk and friend is Judge Ted Crozier, Jr., and Judge McMillan's wife, Kim McMillan, is Mayor of Clarksville, TN. Judge Crozier was a prior law partner with Mr. Rassas, and Mr. Rassas has worked on-committees for Mayor McMillan, who was also a friend of former Clarksville Mayor Ted Crozier, Sr. Mr. Rassas has a clear advantage within his circle of friends, and he has clearly been given great leeway in his submissions to the Court and in not being held to legal standards of evidence, among others.

Husband has cited no evidence that shows that Mr. Rassas has been given "leeway" in his submissions to the trial court, and in our review of the record, we discern no such evidence.

Lastly, Husband argues that:

> Because of their actions in this case, both Chancellor McMillan and Mr. Rassas have no longer been in a position to objectively evaluate or apply any laws. Both have a deeply personal interest in the outcome of this case and whether or not this Court will provide legitimacy to their actions, and Chancellor McMillan also likely realizes the possible impact his actions may have on his wife's career as the Mayor of Clarksville. It would be obvious to any lay person with the knowledge of all of the facts of this case to agree that Chancellor McMillan will always appear to be biased and

10

incapable of impartiality in such a case, one in which he has such a personal interest.

Again, Mr. Foster cites no evidence to show that the Chancellor has an interest in the outcome of this case, and we have found no evidence of such.

For these reasons we find no basis upon which the impartially of Chancellor McMillan could be reasonably questioned or that he violated the Rules of Judicial Conduct in any respect; Husband has not met the burden of showing grounds for recusal. Accordingly, we conclude that the trial court was not required to recuse itself and did not err in denying Husband's motions to recuse.

### E.    Attorney's Fees

Husband argues that (1) the trial court erred when it awarded Wife's attorney's fees for the Wilson County action and (2) he should be awarded reasonable attorneys' fees under the terms of the MDA; Wife argues that the trial court properly awarded her attorney's fees and this Court should award her attorney's fees for this appeal.

"Litigants must typically pay their own attorneys' fees absent a statute or agreement providing otherwise"; [h]owever, parties to an MDA are free to agree that, should litigation over the contract arise, the losing party will be responsible for the prevailing party's fees. *Cherqui v. Laor*, No. W2016-02502-COA-R3-CV, 2017 WL 4843185, at *4 (Tenn. Ct. App. Oct. 25, 2017) (citations omitted). Here, the parties' MDA states:

> In the event that it becomes necessary for either party to bring a court action to assist in the enforcement of this Agreement, and the Court finds that one of the parties has violated the terms of this Agreement, the parties agree that any order to enforce compliance with the terms of this Agreement shall include the expenses of litigation including attorney's fees assessed against the violating party.

The Wilson County action was commenced by Husband's current wife to challenge the garnishment Wife issued to collect the judgment granted in this action. The trial court found that "the attorney's fees and expenses related to the Wilson County action, in which [Husband] was joined as a third party defendant, were necessary to enforce compliance with the terms of the final decree . . . ." We do not disagree that Wife's defense of that action falls within the scope of the terms of the MDA. We do not agree, however, that the court in this case had the authority to award fees for services rendered in the Wilson County action; rather, any award for services rendered in that case would be in the province of the Wilson County Circuit Court to make. *See Carroll v Corcoran*, No. M2012-01101-COA-R3-CV, 2013 WL 2382292 (Tenn. Ct. App. May 29,

2013).[8]   Accordingly, we vacate the award of $1,210.00 for Mr. Rassas' representation in the Wilson County action.

We decline Husband's request that he be awarded his attorney's fees.  In this appeal, he is representing himself and has not incurred counsel fees.  To the extent he seeks an award for services prior to this appeal, he has not shown a basis for an award. There is no order disposing of an application he made to the trial court for us to review; indeed, the trial court agreed with Wife's interpretation of the MDA and granted her relief.  Thus, we decline to award Husband attorney's fees.

Wife requests that she be awarded her reasonable attorney's fees for this appeal. In the first appeal, we awarded Wife her attorney's fees based on the above quoted language of the MDA, holding:

> In light of the above language, we conclude that we have no discretion to deny Wife an award of attorney's fees incurred on appeal. The applicability of that provision turns on whether it was necessary for Wife to bring a court action to assist in the enforcement of the marital dissolution agreement and whether we find that Husband violated the terms of the marital dissolution agreement. As we explained above, the agreement provides for Wife to receive 33% of Husband's disposable retirement pay based on his *rank* at the time of the divorce. Before Wife instituted these proceedings, Husband insisted that Wife should receive an amount based on his *pay* at the time of the divorce. That amount was lower than the amount to which Wife was entitled under the agreement. As such, Husband's actions violated the agreement, and it was necessary for Wife to enforce the agreement by instituting these proceedings. Although the trial court denied Wife's motion to hold Husband in contempt, she ultimately achieved the primary benefit that she sought in these proceedings because the trial court's judgment, which we have affirmed, ordered Husband to act in compliance with the agreement by increasing the amount of his payments to Wife and reimbursing her for the deficiencies in his earlier payments. Moreover, because Husband initiated this appeal, Wife was forced to incur additional attorney's fees to defend the trial court's judgment and ensure the agreement's continued enforcement. As such, we hold that Wife is entitled to an award of attorney's fees incurred on appeal and remand this case for a determination of the appropriate amount of those fees.

---

[8] *Carroll* was a custody and child support proceeding wherein this court held that the Circuit Court in Sumner County, where Mother had initiated the proceeding, did not have authority to award fees for actions taken by her counsel in a companion case filed by Father in Robertson County. *Carroll v Corcoran*, No. M2012-01101-COA-R3-CV, 2013 WL 2382292 at *7 (Tenn. Ct. App. May 29, 2013).

*Foster*, 2017 WL 2992979, at *6 (footnote omitted).  The same considerations addressed in the first appeal apply to this appeal as well; Husband chose to appeal again and raise multiple issues that were decided in the first appeal.  Accordingly, we find that Wife is entitled to her attorney's fees on appeal and remand this case for determination of the appropriate amount of those fees.

## III.  CONCLUSION

For the foregoing reasons, we vacate the award of $1,210.00 attorney's fees for services rendered in the Wilson County action, and affirm the judgment of the trial court in all other respects.

RICHARD H. DINKINS, JUDGE