IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Remanded by the Supreme Court on October 21, 2019

## DONALD EUGENE WINDER, III v. KARA ELIZABETH WINDER

**Appeal from the General Sessions Court for Meigs County**
**No. D1738    Casey Mark Stokes, Judge**

_____

### No. E2019-01636-COA-T10B-CV

_____

This is an accelerated interlocutory appeal pursuant to Tennessee Supreme Court Rule 10B. Wife sought the trial judge's recusal on the ground of bias, alleging, among other things, that her husband—an attorney—appeared regularly in front of the trial judge and that the two men were friends. The trial judge's order denied wife's allegations and their factual basis and denied the motion to recuse. Finding no evidence of bias that would require the trial judge's recusal under Tennessee Supreme Court Rule 10B, we affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Rom Meares and Martha Meares, Maryville, Tennessee, for the appellant, Kara Elizabeth Winder.

Robert Jolley, Jr. and Emma M. Steel, Knoxville, Tennessee, for the appellee, Donald Eugene Winder, III.

### OPINION

#### BACKGROUND AND PROCEDURAL HISTORY

This case is before this Court on remand from the Supreme Court of Tennessee in order to consider the Order Denying Recusal entered on September 24, 2019 by the Domestic Relations Court for Meigs County, Tennessee (the "trial court"). Kara Winder ("Wife") had filed a motion to recuse in the trial court on August 21, 2019, alleging, among other things, that Donald Winder ("Husband"), a practicing attorney, regularly

appeared before the trial court judge, Judge Casey Stokes, and that they were good friends. *Winder v. Winder*, No. E2019-01636-COA-T10B-CV, 2019 WL 4702625, at *1 (Tenn. Ct. App. Sept. 25, 2019) (hereinafter, "*Winder I*"). On August 22, 2019, Judge Stokes denied the motion to recuse in an order in which he failed to set out his basis for doing so. On September 11, 2019, Wife filed a Petition for Recusal Appeal with this Court. *Id*. On September 25, 2019, based on the August 22, 2019 order in the record before us at the time, we vacated the trial court's judgment and remanded the case back to the trial court, concluding that Judge Stokes made insufficient findings as to his reasoning for denying Wife's motion as required by section 1.03 of Supreme Court Rule 10B. *Id*. at *2.

On October 16, 2019, pursuant to section 2.07 of Rule 10B, Wife sought permission to appeal this Court's September 25, 2019 order to the Tennessee Supreme Court. In her Accelerated Application for Permission to Appeal, Wife included the trial court's September 24, 2019 Order Denying Recusal, in which Judge Stokes did set out his detailed findings as to why he denied the motion to recuse and which, as the Supreme Court correctly noted in its order of remand, "was not before the Court of Appeals[,]" in the initial appeal as it was not included in the record of Wife's previous September 11, 2019 Petition for Recusal Appeal. The Supreme Court granted Wife's Accelerated Application for Permission to Appeal on October 21, 2019 and remanded the case to this Court "to consider the trial court's September 24, 2019 Order Denying Recusal." Having now reviewed the trial court's order of September 24, 2019, and, for the reasons hereafter stated, we affirm the judgment of the trial court.

## STANDARD OF REVIEW

The only issue before the Court in this appeal is whether the trial court erred in denying Wife's motion to recuse. As we explained in *Winder I*, the standard of review applicable to Rule 10B petitions is as follows:

> The 2012 adoption of Tennessee Supreme Court Rule 10B requires appellate courts to review a trial court's ruling on a motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01. The party seeking recusal bears the burden of proof, and any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case.

*Childress v. United Parcel Serv., Inc.*, No. W2016-00688-COA-T10B-CV, 2016 WL 3226316, at *2 (Tenn. Ct. App. June 3, 2016) (internal quotations omitted). Additionally, when reviewing a Tennessee Supreme Court Rule 10B appeal, the only order this Court

may review is the trial court's order denying the motion to recuse.[1]  *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012).

## DISCUSSION

As Wife admits in her Accelerated Application for Permission to Appeal, "[t]he alleged ground for [Judge Stokes'] disqualification is bias or perceived bias."  It is a fundamental tenet of our judicial system that a litigant's case be decided by an impartial and unbiased court.  *In re Hooker*, 340 S.W.3d 389, 394 (Tenn. 2011).  As the Tennessee Supreme Court has stated:

> [O]ne of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges.  Accordingly, judges must conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary and shall not be swayed by partisan interests, public clamor, or fear of criticism.

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001) (internal citations omitted).  Additionally, recusal motions with allegations of bias require consideration of whether there may be an appearance of bias even though no actual bias exists.  *Id.*  Therefore, a judge should recuse himself or herself only "'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'"  *In re Hooker*, 340 S.W.3d at 395 (quoting *Davis*, 38 S.W.3d at 564-65)).  The test is an objective one and it is designed to avoid both actual bias and perceived bias because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias."  *Davis*, 38 S.W.3d at 565 (citation omitted).

Here, the allegations of bias or perceived bias contained in Wife's motion to recuse and attached affidavit can be summarized as follows: Husband "regularly appears" before Judge Stokes as a practicing attorney; Husband told Wife "that his friend Matthew Rogers was a good friend of Judge Stokes and could make changes to the Orders if needed"; within a short time after Wife filed a repudiation of the parties' Marital Dissolution Agreement and Parenting Plan, Mr. Rogers called Husband and had a thirty-seven minute telephone conversation, after which Husband called Wife, asking what changes she wanted made to the MDA and Parenting Plan;[2] and Wife "observed Husband and [Judge Stokes] socializing and consuming alchol [sic] togethert [sic] alongt [sic] with

---

[1] Accordingly, in this case, we treat the trial court's later-filed September 25, 2019 order, in which Judge Stokes set out his detailed findings of fact and conclusions of law, as the order denying the motion to recuse.

[2] Wife maintains that these circumstances made her suspicious of a "leak" or collusion between Husband and the trial court.

Matthew Rogers."[3]  Husband, however, denied all of these allegations, and he specifically stated that he has no personal relationship with Judge Stokes.  After our review of the record, we conclude that Wife's allegations are unsupported by any evidence that would cause either Judge Stokes or a reasonable person in his position to question his impartiality or the integrity of the judicial system.

In its September 24, 2019 Order Denying Recusal, the trial court found that, "[a]lthough there were numerous accusations made through [Wife's] counsel and [Wife's] affidavit, there was no proof presented nor was there any evidence presented that would even slightly support [Wife's] allegations that the Court would not be able to be fair and impartial" and that "[a] person of ordinary character and prudence attending the hearing or being privy to the court file would have no reasonable basis to reasonably question the Court's fairness or impartiality."  Indeed, Wife proffered no evidence in support of her allegations of Judge Stokes' bias or perceived bias.  Without more, these unsupported allegations are insufficient to require Judge Stokes to recuse himself.  *See Bledsoe v. Bledsoe*, No. W1999-01515-COA-R3-CV, 2000 WL 371196, at \*6 (Tenn. Ct. App. Apr. 11, 2000); *see also Wiseman v. Spaulding*, 573 S.W.2d 490, 493 (Tenn. Ct. App. 1978) (affirming the trial court's refusal to recuse itself where appellant's affidavit contained "nothing more than circumstances from which it might be inferred that the Trial Judge might have some reason to have a favorable or unfavorable opinion of the parties").  Additionally, in its September 24, 2019 Order Denying Recusal, the trial court specifically addressed certain allegations made by Wife and found the following in relevant part:

> 6. The court did not disclose any *ex parte* communications regarding this case because none exist.
>
> 7. [Wife] complained that [Husband] practiced regularly in front of this court and presented a list of Meigs County cases that [Husband's] law firm had been involved with.  The allegation and list presented by [Wife's] counsel contained cases from other courts/judges and cases that had been litigated prior to this Judge being elected.  The list of cases presented also contained adoption cases and this Court does not have jurisdiction over any adoption cases.  While this court acknowledges that [Husband's] firm appears in front of him on occasion, the same is not regular nor is the firm [Husband] works for on the Court's appointment list.
>
> 8. The court has a professional relationship with [Husband] through our respective jobs and the same has caused [Husband] and the court to cross paths on occasion.  The court has not personally socialized with or

---

[3] There is no proof in this record as to who Matthew Rogers is or what his connection is, if any, to Judge Stokes.

- 4 -

communicated with either party in this case. The Court has appeared and seen both [Husband] and [Wife] at a Bar association Christmas function or other similar events in the past. The Court does not recollect any specific personal conversations with either party. The court is of the opinion that it will be impartial and follow the law based on evidence that may or may not be presented.

Accordingly, the trial court specifically rebutted Wife's allegation that Husband "regularly appears" in front of Judge Stokes as well as her allegation that Husband and Judge Stokes are close friends who socialize and consume alcohol together. The fact that the trial court did not specifically address Wife's allegation that Husband is friends with a Mr. Rogers, who could "make changes" to judicial orders, is irrelevant and unnecessary considering that "[t]he party seeking recusal bears the burden of proof" and, as previously stated, Wife proffered no such proof of any such relationship. *In re Estate of Miller*, No. E2018-00658-COA-T10B-CV, 2018 WL 1989610, at *2 (Tenn. Ct. App. Apr. 27, 2018). Moreover, even taking Wife's allegation as true—that Mr. Rogers did call Husband and notify him of Wife's filing a repudiation of the MDA and Parenting Plan—Wife nevertheless failed to prove how this would indicate a connection to or a manifestation of Judge Stokes' bias or perceived bias. Indeed, Judge Stokes made this point during the hearing on Wife's motion to recuse:

> Ms. Meares: [Husband] had told [Wife] that he had Matthew Rogers who could do lots of things in this court. That's what he told her.
> The Court: So how does that contort with what you're saying?
> Ms. Meares: Well—
> The Court: Did he talk to his lawyer? How does that—
> Ms. Meares: Because he received a phone call right when it happened.
> The Court: So—
> Ms. Meares: That's the only—it made her very, very suspicious. Is that what the Court's asking me about, why she felt that way?
> The Court: Yea, I don't know how that would contort to me.
> Ms. Meares: It wouldn't. It wouldn't. It is the perception with him telling her that there is that ability, and then her viewing that tied in in the conversation even before she's back after filing her repudiation, hadn't even given him a copy of it. It's the perception on [sic] impropriety that I have addressed.

Wife presented no proof of any improper relationship—or of any relationship whatsoever—between Mr. Rogers and Judge Stokes, and, regardless, the fact remains that Wife's repudiation, once filed, was public record and available for anyone, including Mr. Rogers, to see. Accordingly, Wife's suspicions, without more, would not cause a person of ordinary prudence and in Judge Stokes' position to find a "reasonable basis for questioning the judge's impartiality." *See In re Hooker*, 340 S.W.3d at 395; *see also*

*Davis*, 38 S.W.3d at 564-65. Therefore, we conclude that the mere allegations of bias and perceived bias contained in Wife's motion to recuse and affidavit are insufficient to require Judge Stokes to recuse himself.

**CONCLUSION**

For the foregoing reasons, the trial court's denial of Wife's motion to recuse is affirmed.

 

_____

ARNOLD B. GOLDIN, JUDGE